MILLER, Judge.
Defendant motorist insured, Cloma Marie Dupuis, struck and killed a 7J4 year old pedestrian, Paula Ann Perron, on a residential street in Lafayette on the clear dry day of Saturday, May 10, 1969. The trial judge held that the motorist was negligent, but that her negligence was not a proximate cause of the accident; that “the proximate cause of the accident was the child darting into the street from the house *688 when there was not sufficient time for the defendant driver to avoid striking the child.” Plaintiff appealed. We find manifest error and reverse.
Defendant motorist was driving south on North Buchanan Street at a speed of 30 to 35 mph in a 25 mph zone. She was familiar with this route and was late for work. She still had several miles to drive. The street is blacktopped to a width of 24 feet 10 inches and has concrete curbs. There is no centerline painted on the street. The concrete sidewalk paralleling the street is separated from the street by a narrow neutral ground.
Paula Ann entered the street from the west side (the motorist’s right) and was struck by the front of the car at a point about midway of the (driver’s) right half of the front of the car. Although the point of impact was not determined, the motorist was in the southbound lane at impact. All skidmarks were in that lane. The car had only turned slightly (if at all) to the left when it came to rest. The investigating officer testified that the car came to rest with the left front right at the centerline of the street. He referred the court to Exhibit P-9 (a color photograph showing defendant’s car at the point where it came to rest) to show the angle at which the car came to rest. That photograph together with the officer’s sketch (Tr. 29) showing what he found when he investigated the accident, show that if Mrs. Dupuis turned to her left at all, it was almost imperceptible.
The sketch shows that the car laid down 35 feet of skid marks. It is not made clear whether these 35 feet were only the marks behind the car or included the skidmarks which would presumably be located under the car. It was not established that these marks were laid down before or after the child was struck. But accepting the motorist’s testimony, we must conclude that the skidmarks were laid down after impact. If that is correct, the impact threw the child a distance of at least 50 feet.
The right front tire of defendant’s car came to rest 9 feet 2 inches east of the west curb of the street. The child’s body came to rest 15 feet 10 inches south of the car’s resting place and only three feet east of the west curb of the street.
Of paramount importance is the fact that as the motorist proceeded south on this straight and level street, there was no obstruction to her visibility from either stationary objects or moving vehicles. The motorist saw the child standing on the neutral ground between the sidewalk and the west curb of the street. She so testified on eight separate instances. Vol. II, Tr. 28, line 13; Tr. 35, line 1, line 7, line 12, and line 22; Tr. 36, line 7, lines 12-14 and lines 18-20.
After seeing the child standing on the neutral ground, the motorist did not see the child again until after her car came to rest.[1] Except for the noise of the collision, she would not have known that she struck the child. When her car came to rest, she ran to the back of her car looking for the child. She later walked to the front to find that the child was being tended to by Mr. Credeur, a witness to the accident.
Mr. Credeur had stopped his car facing west at the “T” intersection of Mudd and North Buchanan Streets. He was within 50 feet of the point where the child’s body came to rest. Credeur was waiting (on Mudd Street) to turn left to head south on North Buchanan. When he looked to his right he saw the approaching defendant motorist and elected to wait until she had passed before proceeding into the intersection. He did not notice the child but admitted that he was not looking for anything except approaching traffic. He then looked to his left. When he heard “tires *689 hollering” he looked back to his right and saw the child “froze in the street” and the car hit the child.
Mr. Credeur’s wife was a passenger in the right front seat. She too looked to the right and saw the approaching defendant motorist, but did not see the child. She explained: “All I had my mind on was the car coming.” Next she looked to her left and then back to her right. At that time she saw the “little girl coming out and the car at the same time. They just seemed to have met at the same time.” But on cross examination, she testified that “When I seen the little girl going off the sidewalk and the car coming, that’s when I screamed and I put my head down and that’s what I saw.” She admitted that she did not see the car hit the child. She doesn’t remember hearing tires squealing. She did not see the car come to a stop.
Defendants-appellees have not cited a single case excusing a motorist from striking a child under any circumstances. There are many cases where the motorist was found free from negligence, but all are readily distinguished.
This speeding motorist saw the child standing next to the curb in a residential district. There were no obstructions to visibility, and there was no moving traffic to distract her attention. The motorist’s failure to see the child move a distance of at least ten feet into the street, and her failure to slow her car or take evasive action constitute negligence which was a legal cause of this accident. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App. 3 Cir. 1966).
Although a great deal of testimony was produced in an effort to show contributory negligence on the part of the mother in allowing Paula Ann to be unattended at the time of the accident, this defense was not argued by brief or in oral argument. We find no merit to this defense.
Paula Ann had the mentality of a three of four year old child. She had an I.Q. of between 40 and 50. She was able to bathe and dress herself. She helped to wash and dry dishes and to make beds. The neighbors (defendants’ witnesses) testified that they loved the child and at times looked after the child.
Paula Ann’s mother resisted the physician’s frequent suggestion that Paula Ann should be placed in a special school. The mother was divorced and was the sole support for Paula Ann and her other two children who were aged 13 and 14 at the time of Paula Ann’s death.
The judgment of the trial court is reversed. The funeral expenses of $970.44 are awarded to plaintiff Clara Marie Co-meaux as administrator of the estate of her minor daughter, Paula Ann Perron. For the death of her child, Clara Marie Co-meaux is awarded the sum of $11,000. Both defendants are cast. The judgment against State Farm Mutual Automobile Insurance Company is limited to its policy limits. Legal interest is awarded from the date of judicial demand. Costs of court both at trial and on appeal are assessed to defendants-appellees.
Reversed and rendered.
HOOD, J., dissents, being of the opinion that the judgment rendered by the trial court is correct.

. The motorist testified on direct examination that the child dashed in front of her car. But on cross-examination (Vol. II, Tr. 43, 44) the motorist admitted that she didn’t know how the child got in front of her car.